UNITED STATES ex rel. COFFMAN v. NORFOLK & W. RY. CO. et al.

(Circuit Court, S. D. West Virginia.   April 17, 1902.)

1. MANDAMUS—PLEA IN ABATEMENT.
        The pendency of another mandamus may be pleaded in abatement of a second mandamus proceeding instituted in the same jurisdiction, wherein the parties and the questions involved are the same.[1]

2. SAME—IDENTITY OF CONTROVERSY.
        Where a final judgment has been rendered in a former proceeding, but an appeal has been taken, and such judgment suspended by a supersedeas bond, and the pendency of such appeal is pleaded in abatement to a second mandamus proceeding, upon consideration of such plea the court is not confined to the pleadings in the former proceeding for the purpose of determining what the real issue therein was, but may look to the pleadings, the evidence, and the opinion of the court filed in support of, and as a part of, the judgment appealed from.

3. SAME—INTERSTATE COMMERCE.
        C. instituted mandamus proceedings against the Norfolk & Western Railway Company et al. under an act of congress of March 2, 1889, alleging unjust discrimination against him, and in favor of O., C. & B. in the shipment of coal in interstate trade from the Pocahontas coal field, and procured an alternative writ commanding the railway company to furnish cars for the shipment of a specific cargo of coal. The railway company denied the allegations of the alternative writ, including the charge of unjust discrimination; and, by written stipulation, matters of law and fact were tried by the court. At the trial the railway company showed by the evidence that it had a system of car distribution, and that it furnished cars, under such system, uniformly to all shippers alike. The district judge found, as a matter of fact, that the system existed, and that it had been uniformly applied, and held, as matter of law, that such system was reasonable and lawful, and refused the peremptory,

---

[1] See Abatement and Revival, vol. 1, Cent. Dig. § 67.

and discharged the alternative, writ of mandamus. The judge so finding filed a written opinion, as a part of the record, in support of his judgment. C. took a writ of error to the circuit court of appeals, and executed a supersedeas bond. Subsequently, the writ of error still pending, C. instituted another mandamus proceeding against the same respondents, alleging the same unjust discrimination, charging the same to be the result of the railway company's arbitrary and unlawful system of car distribution, and praying that a specific number of cars be furnished to him daily. The railway company pleaded the pendency of the first proceeding in abatement of the second. *Held*, upon an inspection of the record upon a replication of nul tiel record, that the parties and subject-matter involved in the two proceedings were the same, and that the second should be abated.

(Syllabus by the Court.)

Mandamus.

Harold A. Ritz and B. M. Ambler, for relator.
Campbell, Holt & Duncan and Jos. I. Doran, for respondents.

KELLER, District Judge. This case comes up upon the alternative writ of mandamus issued therein, and upon a plea of abatement interposed by respondents to said writ, setting forth that on January 15, 1901, in the circuit court for the district of West Virginia, a certain other mandamus proceeding was instituted by the relator against the respondents to compel the furnishing of cars and shipping facilities for transporting coal for the relator, and that in said proceeding the same right of the relator and the same duty on the part of respondents were alleged which are averred in the petition filed in this proceeding, and recited in the alternative writ issued herein; that the respondents in said former proceeding made return, denying the allegations of relator's petition; that issue was joined thereon, a jury waived by written stipulation of attorneys for all the parties, and the issue tried by the Honorable John J. Jackson, judge of said court, in lieu of a jury; that evidence was taken on behalf of both relator and respondents, and the pleadings and proofs submitted to the court and argued by counsel; and that such proceedings were had thereon that on June 15, 1901, a judgment was entered against the relator, and in favor of respondents, denying the peremptory writ of mandamus, quashing the alternative writ, and ordering that the respondents recover of the relator their costs. 109 Fed. 831. The plea then alleges that the parties to the former action were the same as the parties to this action, and that the matter in controversy in that action was and is the same as the matter in controversy in this action, namely, the legality of the said Norfolk & Western Railway Company's basis and method of coal-car distribution in the Pocahontas coal region; that the said matter in controversy in said former action was determined on its merits therein by the final judgment of the circuit court of the United States for the district of West Virginia, and that said judgment still remains in full force and effect; that from said final judgment a writ of error was allowed, on the petition of the relator, to the United States circuit court of appeals for the Fourth circuit, at Richmond, Virginia, and is still pending, undetermined, in said last-mentioned court; and respondents proffer to verify this plea by the record remaining in said last-men

tioned court, a certified copy whereof is filed with the plea, and asked to be taken and read as part of the plea. Under the practice prevailing in West Virginia, the respondents at the same time tendered a motion to quash the alternative writ herein, and a plea in bar vouching the record remaining in the United States circuit court for the district of West Virginia in the former mandamus. To the filing of these pleas and this motion the relator, by his attorneys, objected, and at the same time tendered his motion to strike out said pleas and motion, and, in the event said motions should be overruled, offered his replications of nul tiel record to the plea in abatement and plea in bar tendered. This action was taken for the convenience of both counsel and court, and it was understood and agreed that, while all the questions involved were argued, the decision of the court should take up the matter in legal sequence, and only such matters should be decided as were essential to a final determination of the pleadings herein.

We have first, then, the plea in abatement tendered by the respondents, with an objection interposed to its being filed, which I treat as a demurrer to the plea. The question, then, is whether a former action in mandamus, resulting in a final judgment adverse to relator, which judgment was carried by writ of error to an appellate court for review, and is still there undetermined, is sufficient to abate a subsequent action between the same parties, and involving the same subject-matter. The relator argues that the very terms of the statute (the interstate commerce act as amended; section 10, Act March 2, 1889) provide that the circuit and district courts of the United States shall have jurisdiction, upon the relation of any person or persons alleging such violation of said act as prevents relator from having interstate traffic moved by said common carrier at the same rates as are charged, or upon terms or conditions as favorable as those given for like traffic under similar conditions to any other shipper, to issue a writ or writs of mandamus, etc., and that the terms of the statute contemplate the possible necessity and the certain power to issue more than one writ in favor of a relator. To this there may be several replies. It may be that the words "a writ or writs" were inserted to meet the grammatical necessities arising from the use, in the beginning of the section, of the words "upon the relation of any person or persons," as, if several persons asked the aid of the court, it might be necessary that several writs issue. Again, it may be that more than one writ might be awarded in favor of a single relator on account of repeated violations of the act in respect of such relator; and it might arise that a writ might be refused upon one application by a relator, and subsequently, upon a second application setting forth a different state of facts, a writ might be allowed. But the question now presented upon the objection to the filing of the plea is whether the pendency of a former mandamus proceeding in a court of competent jurisdiction is pleadable in abatement of a second action between the same parties, and with the same matter in controversy. I have no doubt that such is the law. As a general proposition, the pendency of a former suit between the same parties, and involving the same subject-matter, may be pleaded in abatement of a subsequent suit. Hogg, Pl. & Forms, pp. 168, 169, §§ 213, 308; Id., § 245, note; Insurance Co. v. Brune's Assignee, 96

U. S. 588, 24 L. Ed. 737; Cook v. Burnley, 11 Wall. 659, 20 L. Ed. 29; Stephens v. Bank, 111 U. S. 198, 4 Sup. Ct. 336, 337, 28 L. Ed. 399. Merrill, in his work on Mandamus, says (page 343): "The pendency of another mandamus proceeding, wherein the parties and the questions involved are the same, may be pleaded in abatement." See, also, 13 Enc. Pl. & Prac. p. 728, and cases there cited; Merrill, Mand. § 315, and cases cited.

The question then arises as to the status of the mandamus proceeding referred to in the plea as pending in the circuit court of appeals of the United States for the Fourth circuit. From the allegations of the plea, it appears that the action was heard upon its merits, and resulted in a final decision by Judge Jackson adverse to the relator; that a writ of error was allowed to the relator, by virtue of which said proceeding is now in the circuit court of appeals. Is this proceeding now a pending proceeding, in which case it is pleadable in abatement, or a final judgment, in which case, under the authorities cited in Merrill, Mand. § 315, it would be pleadable in bar? The answer to this question can make but little difference, save as it causes us to examine and try the plea in abatement or the plea in bar. In Boswell v. Tunnell, 10 Ala. 958, it was held that where the suit was pending on appeal the same rules will apply as where it was pending in the original court. In Illinois a writ of error may be pleaded in abatement to an action on a judgment if the writ was sued out before the action was commenced, and the writ of error acts as a supersedeas. McJilton v. Love, 13 Ill. 486, 54 Am. Dec. 449. It appears from the record filed with the plea herein that a supersedeas bond was given, and hence the writ of error in the case now in the court of appeals acted as a supersedeas under section 1000, Rev. St. I think it unnecessary to refer to all the authorities cited to show that a supersedeas does not suspend the operation of a judgment as an estoppel. They are very numerous and conclusive. I cite Ransom v. City of Pierre, 101 Fed. 665, 41 C. C. A. 585; Freem. Judgm. §§ 328, 433; Black, Judgm. § 960.

For the foregoing reasons, I have overruled the objection to the filing of the plea in abatement, and also the motion to strike the same out. The plea in abatement now coming on for trial upon the replication nul tiel record thereto, I have examined the record vouched in the plea, and now offered in evidence in support of the allegations thereof, with considerable care. The gist of the contention is that the identical matter in controversy in this action was also in controversy and was decided in the former mandamus proceeding, tried in the circuit court of the United States for the district of West Virginia, the record of which case is now offered in evidence, and that said matter in controversy was the legality and reasonableness of the basis, system, or method of coal-car distribution for interstate traffic in what is known as the "Pocahontas Coal Field." Objection was made on behalf of the relator that the pleadings and judgment in the record do not show, or even tend to show, that this basis was at all in controversy in the former proceeding; that the only place where this becomes apparent is in the opinion of the court setting forth the reasons for its judgment; and that this opinion is neither in form nor effect a special finding of facts, and hence forms no part of the record, and cannot be looked to

to determine what matters were actually in controversy in that proceeding. This conclusion does not appear to be supported in toto by the authorities cited, namely, Parks v. Turner, 12 How. 39, 13 L. Ed. 883; Stone v. U. S., 164 U. S. 380, 17 Sup. Ct. 71, 41 L. Ed. 477; Egan v. Hart, 165 U. S. 188, 17 Sup. Ct. 300, 41 L. Ed. 680. It is true that it has been held that an appellate court cannot, upon writ of error or appeal, refer to the opinion of the court below for the purpose of eking out, controlling, or modifying the scope of the findings of that court. Stone v. U. S., supra. But the opinion of the court is to be treated as part of the record, and may be examined in order to ascertain the questions presented. Egan v. Hart, supra. To the same effect are Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 684, 688, 15 Sup. Ct. 733, 39 L. Ed. 859; Baker v. Cummings, 181 U. S. 117, 21 Sup. Ct. 578, 45 L. Ed. 776, and the recent case of National Foundry & Pipe Works v. Oconto City Water Supply Co. (decided January 6, 1902, by the supreme court of the United States, and reported in advance sheets of the opinions of the United States supreme court) 22 Sup. Ct. 111, 46 L. Ed. ——. In this case the opinion of the court in writing was made a part of the record by the order entered on June 15, 1901, and the order specifically says that, "in conformity to the views in said opinion expressed, doth order and adjudge that the peremptory writ of mandamus herein be, and the same is, denied," etc. If, therefore, the opinion of the court is ever a part of the record, it is in this case. Whatever may be the true scope of the rule when applied to appeals and writs of error (and I think the weight of recent authority is in favor of the doctrine that the opinion of the court may be looked to, to determine the questions in controversy), a somewhat different question is presented when the matter at issue is not whether the court committed any error in its findings, but whether it did in fact decide a certain matter, and whether that matter was in dispute. In such a case I think the opinion of the court is properly a part of the record, and might be looked to in order to ascertain what was decided. But in this case it is not necessary to do this. The evidence, or a great part thereof, has been made part of the record by bills of exception, and shows that the material question submitted to the court for decision was the legality and reasonableness of the "oven basis" of car distribution. See bills of exception Nos. 1 and 2, record.

It also appears, upon the hearing, and after the evidence was submitted, that the relator presented to the court 11 propositions of law, and requested rulings thereon in his favor; that the court overruled each and all of said propositions of law, and refused to affirm any of them. Several of these propositions of law embody the idea that under the evidence in the case the relator, as matter of law, is entitled to have awarded a writ of mandamus as prayed. The refusal to affirm these propositions is made the basis of numerous exceptions in the record. The tenth proposition refers in direct terms to the so-called coke-oven basis of distribution, and the eleventh proposition requested the court to find, as matter of law, that it was the duty of defendant to distribute its available cars upon a basis therein set forth. These propositions, all of which were rejected, taken in connection with the evidence detailed and set forth in the several bills of exception, show

that the substantial matter in controversy was whether the so-called coke-oven basis of distribution, as operated by the respondent, was a legal and reasonable one; and I think that the court held, and intended to hold, as matter of law, that it was, and, by denying at the hearing all the propositions of law asked by relator, gave evidence, negatively it may be, of his findings of law upon the evidence. I may say further that the relator, in his twentieth exception (page 130 of record), evidently adopts the view that the court ruled and decided that the so-called coke-oven basis of car distribution did not work an unjust discrimination against relator. Quite a number of authorities were cited by counsel for the respondents to the proposition that the breadth of the issue determined by the court in rendering judgment in the former proceeding is not determined by the pleadings, but that the evidence heard on the trial may be looked to for the purpose of determining whether or not the questions in the two suits are the same. Black, Judgm. § 614; Wood v. Jackson, 8 Wend. 9, 22 Am. Dec. 603; Smith v. Town of Ontario (C. C.) 4 Fed. 386; Nesbit v. Independent Dist., 144 U. S. 610, 12 Sup. Ct. 746, 36 L. Ed. 562; Wandling v. Straw, 25 W. Va. 692; Sayre's Adm'r v. Harpold, 33 W. Va. 553, 11 S. E. 16; Harshman v. Knox Co., 122 U. S. 306, 7 Sup. Ct. 1171, 30 L. Ed. 1152. I think this is the correct doctrine, and applying it, and looking to the evidence in the former proceeding, we easily ascertain that the whole question was as to whether the system of car distribution adopted by the railway company in the Pocohontas coal field was unjust and discriminative against relator.

A point was made by the relator in argument to the effect that the present suit should not be abated even though I held that the record showed that the former suit involved, as the great question, the so-called coke-oven basis of car distribution, because the present proceedings, in addition to charging that said basis is unjust and discriminative against relator, also charge a number of other matters violative of the interstate commerce act. For example, on page 9 of the printed alternative writ it is charged that the railway company has furnished transportation to relator so irregularly as to disorganize the force at the mine and subject the relator to disadvantage, while no such irregularities are inflicted on other shippers, to wit, Castner, Curran & Bullitt. I confess that this question has given me great difficulty, as it seemed possible that, although one of the questions presented by the present alternative writ had been decided adversely to relator, still, if the specific violations charged by him in it were not all referable to the system or basis upheld by the former decision, they might present a case for relief. I have made diligent search, in the limited time I have had for the investigation of the intricate questions presented, for authority directly upon this proposition, and I have found one case which seems directly in point. In Buffum v. Tilton, 17 Pick. 511, it was held, in a case involving the pendency of a former suit between the same parties, that "where it appears by inspection that the cause of action in the second suit is, in a material and substantial part, the same as in the first, although other causes of action are inserted in the second, it is, within the meaning of the rule of law, an action instituted for the same cause of action, and is a good cause of abatement." Upon re-

flection it has seemed to me that this decision is founded in wisdom, and I therefore adopt and follow it.

A further contention is made by the relator that it is a non sequitur that because the oven basis was reasonable in January, 1901, it is reasonable now; but I think, if it was not violative of law then, it cannot be now. If conditions have so changed that such basis is no longer reasonable or legal, such change should be averred, as otherwise the principle of res adjudicata between the parties is as applicable in the case of car distribution as in the case of any custom or usage of trade, or, as I believe, in any other case,—even one involving the construction or validity of a positive law.

For the reasons given, I find for the respondents upon the issue joined upon the plea in abatement; and, so finding, it is unnecessary for me to consider the other matters presented.